[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 348 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 349 
Noise which is created by the pursuit of a lawful enterprise has no inevitable immunity from judicial suppression. It may have the characteristics which constitute an actionable nuisance. It must, however, be of that quality which affects injuriously and to an unreasonable degree the health or comfort of persons of ordinary sensibilities in the vicinity and exceeds the bounds of reasonable adjustment to the conditions of the locality. Thus, although the noises may emanate from the conduct of a business duly licensed by the State because of its public advantages, the character, volume, frequency, duration, time, and locality of the noises continue to be relevant factors in determining whether the alleged annoyance surpasses the requirements of the business operations and in fact unreasonably interferes with the ordinary comfort of human existence in the neighborhood. Benton v.Kernan, 130 N.J. Eq. 193, 21 Atl. (2d) 755; Vaszil v.Molnar, 133 N.J. Eq. 577, 33 Atl. (2d) 743; Kosich v.Poultrymen's Service Corp., 136 N.J. Eq. 571,43 Atl. (2d) 15; Oechsle v. Ruhl, 140 N.J. Eq. 355, 54 Atl. (2d) 462.
The maxim, sic utere tuo ut alienum non laedas, tersely expresses the established doctrine of the law. And so in such cases it is a question of what's what rather than who's who. *Page 350 
Indeed, the Legislature or governmental agencies cannot constitutionally confer upon individuals or private corporations, acting primarily for their own profit, although for public benefit as well, any right to deprive persons of the lawful enjoyment of their property. Pennsylvania R.R. Co. v. Angel,41 N.J. Eq. 316, 7 Atl. 432; Kosich v. Poultrymen's ServiceCorp., supra; Oechsle v. Ruhl, supra.
The present alleged cause of action relates to the asserted objectionable operations of an airport under the management of the defendants in the Township of Branchburg, Somerset County.
Initially, it must be understood that the primitive common law doctrine that ownership of land extended to the periphery of the universe (as expressed in the figurative phrase, cujus estsolum, ejus est usque ad caelum) has been substantially disestablished. The air has become a public highway, yet the landowner in the present day owns at least as much of the super-adjacent space above the ground as he can occupy and utilize in connection with his land. The law preserves the proper enjoyment of the land and consequently recognizes the exclusive control of the owner over "the immediate reaches of the enveloping atmosphere." United States v. Causby,328 U.S. 256, 66 S.Ct. 1062; see, Hinman v. Pacific Air Transport,84 Fed. (2d) 755 (C.C.A. 9th 1936), cert. den.300 U.S. 654, 57 S.Ct. 431.
Private convenience must often in our modern environments yield to public convenience, but private comfort, health, and safety are still precious in the eyes of the law. Hennessy v. Carmony,50 N.J. Eq. 616, 25 Atl. 374; Reilley v. Curley,75 N.J. Eq. 57, 71 Atl. 700.
A pertinent exemplification of that quality of our law is found in the statute. R.S. 6:2-6, N.J.S.A.
"Flight in aircraft over the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or the water beneath. * * *" *Page 351 
With like intention the State Aviation Commission was created and invested with the power to promulgate reasonable rules and regulations not only to encourage "the development of aeronautics in this State" but to guard "the public safety." R.S. 6:1-29, N.J.S.A.
And so it must be here acknowledged that the corporate defendant has the lawful authority by virtue of its license to maintain and operate its airport. Its mere existence and use do not constitute a nuisance per se. Thrasher v. Atlanta,178 Ga. 514, 173 S.E. 817, 818, 99 A.L.R. 158. It is equally true that a landing field and flying school may become a nuisance if conducted in such an offensive manner as to interfere unreasonably with the general standard of comfort of neighboring property owners. Swetland v. Curtis Airport Corp., 41 Fed.(2d) 929, on appeal 55 Fed. (2d) 201.
In my study of the relevant authorities I have observed that in these cases relief has been sought by the aggrieved property owners either upon the theory of nuisance or upon the ground of trespass, or both. One of the earliest adjudications concerning the relative rights of the aviator and the landowner was announced by the Supreme Judicial Court of Massachusetts inSmith v. New England Aircraft Co., Inc., 270 Mass. 511, in which the invasion at low altitudes of the unoccupied air space over the land was recognized as a technical trespass. The oppugnant rationale maintains that by the common law, interpreted in the light of modern conditions, there exists a public right of aviation over the lands of all owners at any height which, without contact with anything connected with the land, does not thus interfere with the existing use of the property. It prefers to measure the responsibility and conduct of the aviator in the application thereto of the established elements of a private nuisance. Both theories have able and learned advocates. Many articles on the subject, published in legal periodicals, are cited in Burnham v. Beverly Airways, Inc., 311 Mass. 628; see, also, Delta Air Corp. v. Kersey, 193 Ga. 862, 20 S.E.(2d) 245, 140 A.L.R. 1352. It is sufficient to say that the flight of aircraft across the land of another cannot be said to be a trespass without taking into consideration the *Page 352 
question of altitude. It has been said that in cases of this nature the law of private nuisance is a law of degree, hence projecting in each case the factual question whether there is an appreciable and substantial injury causing material discomfort and annoyance.
Led by the foregoing observations, I have undertaken the consideration of the occurrences and accompanying circumstances revealed by the evidence in the present case. It is gratifying to state that the evidence was of a high quality, exceedingly informative and skillfully marshalled and presented by counsel. Aerial photographs were exhibited, decibel readings of the noise levels of the planes were disclosed, meteorological data supplied, and actual recordings of the noises were reproduced in court. The inclusion here of a narrative of the evidence, although time-consuming, would afford me some compensating pleasure, but I understand that brevity is now to become the fashionable quality of the judicial opinions of our state courts.
Accordingly I shall pass directly to a summary announcement of my findings of fact:
1. The airport itself, as located and designed, is not an actionable nuisance.
2. Complainants' contention that it is impossible to conduct the airport in an unobjectionable manner is not adequately established by the evidence.
3. From the inception of the enterprise and during a period thereafter the defendants conducted and indulged in repeated plane flights either directly over or in relatively close proximity to the residence of the complainants at altitudes sometimes as low as 300 feet.
4. The consequential noises of such flights were startling and harassing, and the proximity of the planes was menacing and alarming, thereby unreasonably and unjustifiably impairing in a substantial degree the peaceful use and occupation of the complainants' dwelling, against which annoyances the complainants are entitled to injunctive relief.
5. Such flights were not motivated by any malevolence on the part of the defendants. *Page 353 
6. Specific flight patterns with accompanying instructions have now been devised and posted and circulated, which, if obediently pursued by all aviators and student flyers using the defendants' airport, will materially abate the former annoyances.
7. There is some evidence tending to prove that the defendants have not strictly complied with those more recently adopted flight patterns.
In the circumstances a judgment will be entered enjoining the defendants, in the absence of emergency, from operating their planes directly over and within a stated distance from the buildings of the complainants, and directing them to comply until the further order or judgment of the court with the flight patterns and instructions to which the pertinent testimony has related. The judgment must be prepared in accordance with the requirements of Rule 3:65-5.