**AMERICAN AIRLINES, INC., et al.,**
**Plaintiffs,**

v.

**CITY OF AUDUBON PARK, KEN-**
**TUCKY, et al., Defendants.**

**Civ. A. No. 5828.**

United States District Court

W. D. Kentucky.

April 1, 1968.

Wyatt, Grafton & Sloss, by Wilson W. Wyatt, Stuart E. Lampe, James N. Williams, Jr., Louisville, Ky., for plaintiffs.

Henry Burt, Jr., Louisville, Ky., for defendants.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

BROOKS, Chief Judge.

This action was submitted to the Court on the motion of the Plaintiff Air Lines for summary judgment dismissing the Counter Declaration of the Defendants and granting relief to the Plaintiffs in accordance with the demands contained in the prayer of their Complaint. The Court considered the verified Complaint of Plaintiff, the two Affidavits of Henry P. Julliard, the Affidavit of Clay W. Hedges, the Answer and Amended Answer of the Defendants including the Counter Declaration contained therein, the objections of the Plaintiffs to the filing of the Amended Answer, the Replies of the Plaintiffs to the Counter Declaration contained in the Original and the Amended Answer and the written Statement of Counsel for the Plaintiffs. The Court also considered the oral arguments for both Plaintiffs and Defendants at the hearing set for that purpose February 27, 1968.

## FINDINGS OF FACT

The Court finds:

1. The Plaintiffs, American Airlines, Inc., Delta Air Lines, Inc., Eastern Airlines, Inc. and Trans World Airlines, Inc., are all corporations incorporated under the laws of the State of Delaware, and none of said Plaintiffs has its principal place of business in the Commonwealth of Kentucky. The Defendant, City of Audubon Park, Kentucky, is a municipal corporation of the Commonwealth of Kentucky, and each of the Defendant Trustees, George W. Stebbins, H. Patterson Pope, Mrs. Clarence L. Henderson, Theodore H. Amshoof and Dr. Burton M. Heine is a citizen and resident of Kentucky. As to each Plaintiff, the amount in controversy in this action exceeds, exclusive of interest and costs, the sum and value of $10,000. An actual controversy

exists between the parties with reference to the constitutionality of an ordinance enacted by the City of Audubon Park and the conflict of its terms with Acts of Congress and regulations of the Federal Aviation Administration (hereinafter "FAA") Department of Transportation, adopted pursuant to Acts of Congress.

2. Each of the Plaintiffs is engaged as a common carrier in the transportation of passengers, property and mail of the United States Post Office Department, in interstate commerce to and from Standiford Field in Louisville, Kentucky, and the controversy in this litigation and the statutes, regulations and ordinance giving rise to this controversy affect such interstate commerce.

3. Standiford Field is controlled and operated by the Louisville and Jefferson County Air Board, a public entity, created by the laws of Kentucky. Each of the Plaintiffs, in the conduct of its business as a common carrier, has substantial contracts for the use of the facilities of Standiford Field. Runway 19 of Standiford Field (and its counterpart, Runway 1 which uses the same strip of concrete from the opposite direction) is 7,800 feet in length and is the longest runway at Standiford Field. As shown by the diagram filed as "Julliard Exhibit A" with his Affidavit of February 16, 1968, the City of Audubon Park lies astride the extended center line of Runway 19, the nearest limit of said City being 4,800 feet from the end of the runway and the most distant limit being 8,000 feet from the end of the runway. It is necessary for aircraft approaching for a landing on Runway 19 to fly in the navigable airspace over the City of Audubon Park.

4. The City of Audubon Park, on the 20th day of November 1967, enacted its Ordinance No. 4, Series 1967, by the terms of which it declared that it was unlawful for any person, agency, corporation or business entity to fly, operate, or in any manner participate in the flight or operation of any aircraft over the corporate limits of Audubon Park at a height of less than 750 feet and further provided for a fine in the amount of $100 for each offense against the provisions of the ordinance. The Defendant officials of Audubon have publicly and repeatedly announced their intention vigorously to enforce the ordinance; to institute criminal proceedings against the Plaintiffs in the event of any flights lower than said elevation of 750 feet.

5. Pursuant to 49 U.S.C. §§ 1303, 1304, 1348(a), 1348(c), FAA has adopted various regulations affecting the navigable airspace in general all over the United States and in particular over Standiford Field and the City of Audubon Park, which regulations control the use of said airspace by all aircraft, including the aircraft of Plaintiffs.

6. By Regulation 14 C.F.R. 1.1, an airport traffic area is defined as the airspace within a horizontal radius of five statute miles from the geographical center of an airport such as Standiford Field, at which a control tower is operating, extending from the surface up to, but not including, 2,000 feet above the surface. The City of Audubon Park is within the airport traffic area of Standiford Field.

7. 14 C.F.R. 71.11 provides that control zones listed in Sub Part F, consist of controlled airspace extending upward from the surface of the earth. 14 C.F.R. 71.171, (Sub Part F) specifically designates as a control zone the airspace within a five mile radius of Standiford Field.

8. 14 C.F.R. 91.87(a) and (b) require all persons operating aircraft to and from Standiford Field, when in the airport traffic area, to maintain two-way radio contact with the air traffic control tower maintained by FAA personnel. 14 C.F.R. 91.75 prohibits an operator of an aircraft, except in an emergency, from operating the aircraft in any manner contrary to an air traffic control instruction.

9. 14 C.F.R. 91.87(d) (3) requires an aircraft approaching to land on a runway served by a visual approach slope indicator (hereinafter called "VASI"), to maintain an altitude at or above the VASI glide slope until a lower altitude is necessary for a safe landing. The

Regulation by its terms, however, does not prohibit normal bracketing maneuvers above or below the VASI glide slope, which are conducted for the purpose of remaining on the glide slope.

10. There has been installed on Runway 19 the VASI system. It establishes a visual glide path which descends at an angle of three degrees (3°) to the recommended touchdown point on Runway 19. To the pilot of an aircraft approaching too high (above the glide path) the VASI lights appear white; to the pilot of an aircraft approaching too low (below the glide path) the VASI lights appear red; when the aircraft is properly on the glide path the pilot sees a proper combination of red and white lights which blend to emanate a pinkish glow. The normal bracketing maneuvers authorized by Regulation 91.87(d) permit a pilot at times to go below the three degree (3°) VASI effective visual approach slope designated as Line D on Julliard Exhibit A, but at no time is he authorized to go below the line designated as the VASI approach clearance surface designated as Line E on Julliard Exhibit A.

11. The VASI effective visual approach slope, at or above which (subject to bracketing maneuvers), the FAA regulations require and authorize an aircraft to approach to land on Runway 19, crosses the most distant limit of the City of Audubon Park at an elevation of 442 feet above ground level and crosses the City limit nearest the end of Runway 19 at an elevation of 282 feet above ground level.

12. 14 C.F.R. 91.117 provides that in approaching to land no person may operate an aircraft below a prescribed minimum descent altitude (MDA) unless, when he reaches that altitude on approach to the runway, the threshold of the runway or its approach lights are clearly visible to the pilot. If not clearly visible, the pilot is required to execute a missed approach procedure.

13. The diagram designated Julliard Exhibit A demonstrates that the MDA of 400 feet established by 14 C.F.R. 97.17 for Runway 19 is reached on the glide slope for landing on that runway at a point in the navigable airspace above Audubon Park 7,010 feet distant from Runway 19. A pilot who descends to the 400 foot altitude and then executes a missed approach maneuver because he cannot see the runway or the approach lights necessarily is authorized to fly below 750 feet.

15. FAA approved procedures for landing on Runways 1 and 29 as Standiford Field, as well as on Runway 19, authorize aircraft to execute circling approaches to those runways at elevations over Audubon Park lower than 600 feet, see Affidavit of Clay W. Hedges.

16. In 14 C.F.R. Part 77, which Part is designated "Objects Affecting Navigable Airspace", the FAA has established various surfaces of various elevations. The Regulations provide that any objects constructed into the airspace above these elevations are obstructions to air navigation. The manner in which these surfaces cross the air above the City of Audubon Park is demonstrated on the diagram designated Julliard Exhibit A. In each instance, these surfaces are far below the 750 foot elevation provided for in the ordinance.

17. Pilots operating the aircraft of Plaintiffs cannot comply with the FAA regulations and also comply with the provisions of the ordinance of the City of Audubon Park. In order for Plaintiffs' aircraft to make safe landings on Runway 19, pilots must fly in the FAA-regulated navigable airspace above the City of Audubon Park under the 750 foot elevation. Pilots cannot maintain an altitude of 750 feet while over the City of Audubon Park and then descend from that altitude to make a landing on Runway 19, since such rate of descent is too precipitous.

18. Runway 19 is orientated to the prevailing winds affecting Standiford Field and elimination of the use of this runway would seriously curtail air transportation to and from the Louisville

metropolitan area. Any attempt to divert traffic from Runway 19 to other runways would create a situation hazardous to persons and property.

19. Each of the Plaintiff Air Lines would be caused great and irreparable damage if each complied with the provisions of the ordinance of the City of Audubon Park, and no one of Plaintiffs has an adequate remedy at law.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1337.

2. The Amendment to the Answer and Counter Declaration tendered by counsel for Defendants at the hearing on the Motion for Summary Judgment is filed over the objection of the attorneys for the Plaintiffs. Objections and Reply of Plaintiffs to said Amendment are also filed.

■ 3. Paragraph 2 of the original Counter Declaration seeks to have this Court declare the nature and kind of ordinances the City of Audubon Park might in the future be authorized to adopt. The allegations of this Paragraph do not raise a justiciable issue and the Plaintiffs' motion to strike this Paragraph is sustained.

■ 4. Paragraph 3 of the Amended Counter Declaration alleges that the Acts of Congress and the regulations of the FAA, Department of Transportation, establishing navigable airspace are void on the alleged theory that, prior to the establishment of navigable airspace, compensation must be paid for such airspace and that no compensation has been paid. This is not a "taking" case. The Plaintiff Air Lines use the navigable airspace established by Congress and by regulations of the FAA in approaching to land at Standiford Field, which field is under the control of the Louisville and Jefferson County Air Board. This Court cannot in this counter-action on behalf of a municipality declare an alleged taking of property of individuals to be compensable or unconstitutional. Paragraph 3 of the Amended Counter Declaration does not state facts upon which the Court can make a declaration of the rights of the parties.

■ 5. The allegations of the Complaint and the allegations of Paragraph 1 of the Counter Declaration raise issues constituting an actual controversy concerning which pursuant to 28 U.S.C. § 2201 et seq., the Court will make a declaration of rights.

6. Congress has declared a public right of freedom of transit through the navigable airspace of the United States, 49 U.S.C. § 1304, and has defined navigable airspace to include airspace needed to insure safety in takeoff and landing of aircraft, 49 U.S.C. § 1301(24).

7. Congress has vested in the FAA, Department of Transportation, power to adopt rules and regulations to control the use of navigable airspace, 49 U.S.C. §§ 1303, 1348(a) and 1348(c).

8. As shown in the Findings of Fact of the Court, the FAA has adopted regulations relative to navigable airspace which authorize and require Plaintiffs, when landing on Runway 19 at Standiford Field, to fly their aircraft in navigable airspace over the City of Audubon Park at altitudes under the elevation of 750 feet.

■ 9. Enforcement of Ordinance No. 4, Series 1967, of the City of Audubon Park would constitute an intolerable and undue burden upon interstate and foreign commerce. Under the Commerce Clause (Art. I, § 8, cl. 3) of the United States Constitution, the City of Audubon Park has no power to regulate interstate and foreign air traffic in the manner set forth in said ordinance.

10. Pursuant to its power set forth in the Commerce Clause the Congress has adopted valid statutes, and pursuant to such statutes the Federal Aviation Administration, Department of Transportation, has adopted valid regulations. Ordinance No. 4, Series 1967, of the City of Audubon Park is in direct conflict with said statutes and regulations. Under the Supremacy Clause (Art. VI, § 2) of the

**212**

United States Constitution, such statutes and regulations are the supreme law of the land, and are binding on this Court, anything in the ordinances of the City of Audubon Park to the contrary notwithstanding.

11. The statutes enacted by the Congress clearly expressed an intent fully to preempt the field of law and regulation of interstate and foreign air traffic. The City of Audubon Park, therefore, has no power to enact Ordinance No. 4, Series 1967.

12. Said Ordinance is unconstitutional and void, and, therefore, is unenforceable.

13. Plaintiffs are entitled to a declaration of rights declaring the ordinance to be unconstitutional and to a permanent injunction in accordance with Paragraph 1 of the demand contained in Plaintiffs' Complaint.