CITY OF WINNER, Respondent v. LINEBACK, Appellant

(192 N.W.2d 705)

(File Nos. 10659, 10745. Opinion filed December 16, 1971)

**Charles Rick Johnson,** of **Johnson & Johnson, Gregory,** for appellant.

**John Simpson,** Winner, for respondent.

WOLLMAN, Judge (on reassignment).

This consolidated appeal involves a forcible entry and detainer suit brought by the City of Winner, South Dakota, (City) against Don Lineback, doing business as Don-Aire Flying Service (Lineback) and a declaratory judgment action brought by Lineback against the city. Lineback appeals from judgments entered in favor of the city in both actions.

On June 28, 1967 Lineback presented a written application to the members of the Winner city council for permission to lease from the city for a charge comparable to that charged other operators a portion of land on the Winner Municipal Airport on which to place a commercial flying operations hangar and service area.

A committee was authorized by the city council to go with Lineback for the purpose of selecting a site on which Lineback could build. This apparently was done the next day and thereafter Lineback constructed a hangar on the site approved by the committee. He also installed gas tanks and moved a trailer house next to the hangar for use as an office. No written lease was ever executed by Lineback and the city and the record does not reveal that the city council ever took any formal action to enter into a lease with Lineback. Lineback had no permission from the city to place the trailer house on the airport nor did he have any lease for the property occupied by the trailer house.

On July 17, 1967 Lineback's application for a water tap at his hangar site was unanimously approved by the city council. This was later referred to in the proceedings as an "outlaw" water tap inasmuch as it was not within the city limits. A dispute arose over the gas tanks and the trailer house and the city attorney notified

Lineback by letter on July 26, 1967 to remove them from the airport. Lineback was also advised that he was to refrain from selling petroleum products on the airport property.

On December 12, 1967 the city council adopted Ordinance No. 369 which adopted regulations governing the use of the municipal airport and which charged the Zoning Board of Adjustment with the duty of maintaining, operating and controlling the airport. The Board of Adjustment was also given the responsibility of zoning the airport. Pursuant to the provisions of this ordinance, the city council adopted a resolution on January 15, 1968 establishing fees for commercial aeronautical operations at the airport. This resolution also reserved to the city the exclusive right to sell gasoline, oil, and other lubricants at the airport. Lineback was asked by the city to enter into a written lease and a fixed base operator's agreement based upon the rentals established in Ordinance 363 adopted August 21, 1967 and the fees established by the resolution of January 15, 1968. Lineback refused to enter into these agreements and did not pay the rentals or fees whereupon the city brought an action for forcible entry and detainer in June of 1968.

The trial court held that inasmuch as Lineback did not have a lease with the city for the portion of the airport occupied by his hangar but had received permission to construct a hangar on the particular site, Lineback's legal interest in the land occupied by his hangar was that of a tenant at will, which tenancy could be terminated by the city.

The court held that the city was entitled to recover the sum of $51 damages and rent on the hangar area. The court also held that Lineback would be entitled to use the portion of the airport occupied by his hangar and gas tanks upon his executing and delivering a lease to the city and paying the rental due thereunder. The judgment provided that the city was entitled to immediate possession of that portion of the municipal airport occupied by defendant's trailer house. The judgment was then stayed pending an appeal.

Lineback then brought a declaratory judgment action seeking a determination of his rights, status and legal relations with the city under the provisions of Ordinance No. 369 and the resolution of January 15, 1968. The city's cross complaint asked for (1) judgment against Lineback in the amount of $1,200 for the fees allegedly due from Lineback from and after January 15, 1968, (2) for a permanent injunction enjoining Lineback from operating a commercial flying service until such time as he complied with all of the ordinances, regulations and resolutions of the city and (3) for a permanent injunction enjoining Lineback from making commercial sales of gasoline and oil products at the municipal airport.

The trial court found that the fees established for commercial use at the airport by the resolution adopted on January 15, 1968 were reasonable and that they applied to Lineback's commercial flying operations at the airport. The court held that the regulations established by Ordinance No. 369 applied to Lineback. The court also held that the city had the power to retain the exclusive right to the commercial sale of gasoline at the airport. Judgment was entered against Lineback in favor of the city in the amount of $1,100 for the commercial fees due from Lineback from and after January 15, 1968. The judgment also permanently enjoined Lineback from commercially selling gasoline at the municipal airport.

Lineback's first contention on appeal is that Ordinance 369 gives the city arbitrary, undefined and unconstitutional powers to punish him criminally or dispossess him of his investment. Lineback characterizes Ordinance 369 as a "lengthy hodge-podge of zoning jargon" which gives the city's Zoning Board of Adjustment total and unrestrained control over all activities at the airport. He also argues that because the federal government has taken complete and national sovereignty of the air space of the United States, 49 U.S.C.A. § 1508, and is authorized to regulate and control municipal airports which have used federal aid in their development, such as the Winner Municipal Airport, 49 U.S.C.A. §§ 1348-1350, Ordinance 369 is void to the extent that it attempts to regulate his interstate business.

SDCL 50-7-2 gives the governing body of a city power and jurisdiction to " * * * acquire, establish, construct, own, control, lease, equip, improve, maintain, operate, and regulate airports or landing fields * * * ". SDCL 50-7-13 empowers the governing body of a city to create by ordinance a board whose sole purpose shall be to improve, regulate and supervise the operation and management of their facilities.

SDCL 50-7-14 provides that:

"The governing body of a city, town, or county may adopt regulations and establish fees or charges for the use of such airport or landing field, or may authorize an officer, board, or body of such city, town, or county having jurisdiction to adopt such regulations and establish such fees or charges, subject, however, to the approval of such governing body before they shall take effect."

■■ In our opinion there is nothing in Ordinance 369 which attempts to supersede or which conflicts with any rule, regulation or requirement of the Federal Aviation Administration. Rather, the ordinance is drafted in such a manner as to conform with the requirements, recommendations, rules and regulations of the Federal Aviation Administration and the State Aeronautics Commission. The federal government has not excluded the existence of areas of proper airport regulation by local authorities. Aircraft Owners and Pilots Association v. Port Authority of New York, D.C., 305 F.Supp. 93. We believe that the ordinance complies with the requirements of SDCL 50-10-6 which requires municipal zoning and height limitations to conform to the standards of any agency of the federal government which may be concerned with the fostering of civil aeronautics.

■ The ordinance thus does not give unrestrained, undefined powers to the Board of Adjustment or to the city. Rather, a fair reading of the ordinance leads to the conclusion that it was enacted for the purpose of insuring the safe, efficient use of the municipal airport in conformance with the standards of the Federal Aviation Administration and the South Dakota State Aero-

nautics Commission. See SDCL 50-10. We will not invalidate the ordinance merely because it instructs the Board of Adjustment to adopt rules, regulations and restrictions which conform to those adopted by federal and state agencies.

■ Lineback challenges section 17 of Ordinance 369 on the ground that it allows the Zoning Board of Adjustment to adopt rules and regulations which shall be in full force and effect upon the filing of copies with the City Auditor, whereas SDCL 50-7-14 requires that such rules must be approved by the governing body of the city before they shall take effect. There is merit in this contention. Lineback, however, has not directed our attention to any rules and regulations which have not been approved by the city. We will not strike down the entire ordinance because of the possibility that at some future time the Zoning Board of Adjustment and the city will not comply with statutory requirements.

■ ■ Lineback next contends that he had an existing use to which Ordinance 369 does not apply because it was passed some five months after he had constructed his commercial area and started to do business. Section 2(3) of Ordinance 369 defines a nonconforming use as:

" * * * any structure, tree or use of land which does not conform to regulations prescribed in this Ordinance or an Amendment thereto, as of the effective date of such regulations."

Section 6 of the ordinance states that:

"The regulations herein prescribed in this said Ordinance shall not be construed to require the removal, lowering, or other change or alteration of any structure or tree not conforming to the regulations as of the effective date hereof, or otherwise interfere with the continuance of any non-conforming use. Nothing herein contained shall require any change in the construction, alteration, or intended use of any structure, the construction or alteration of

which was begun prior to the effective date of this Ordinance, and is diligently prosecuted and completed within two years thereof."

The trial court construed Ordinance 369 as dealing with two distinct subjects, sections 3 to 11 relating to zoning as that term is normally used, with the remaining sections relating to regulations governing the use of the airport. The trial court held that section 6 of the ordinance applies only to the zoning portion of the ordinance as it relates to structures and trees and not to the parts of the ordinance which establish regulations governing the use of the airport.

We agree with the trial court's analysis of the ordinance. We also agree with the city's contention that Lineback's operation at the airport prior to the time of the passage of Ordinance 369 was a conforming use in that Lineback was operating a commercial flying service in conformity with the purposes for which the property was dedicated to the use of the public as a whole for aviation purposes. It does not appear from the record that Lineback's hangar and gas tanks do not conform with the height limits and use restrictions set forth in the ordinance.

As we have stated above, the overall purpose of Ordinance 369 is to insure the safe, efficient operation of the Winner Municipal Airport. The city does not contend that Lineback's use of land at the airport is in conflict with any of the zoning regulations contained in Ordinance 369. The imposition of fees for the use of the airport for commercial flying services as set forth in the resolution of January 15, 1968, does not in our opinion constitute a restriction on Lineback's intended use of the structures which he erected at the airport. Carrying Lineback's argument to its limit, the city could never impose fees upon any commercial operator who was in business prior to the date the fees were adopted. We do not believe that any private operator can acquire such an interest in land owned, controlled and occupied by a city as a public airport under the provisions of SDCL 50-7 that will prohibit a city from imposing fees for the continued private use of the airport for commercial flying purposes.

■ ■ Lineback next contends that by making a large, permanent investment at the airport in the way of the hangar and supporting facilities in reliance upon the action of the city in approving a spot where he could erect the hangar, he acquired property rights in his hangar and business that he could not be deprived of without due process of law or by a prospective zoning ordinance.

The trial court found that there was no lease between Lineback and the city and that therefore Lineback was a tenant at will. We believe that this finding is amply supported by the evidence. The city is not attempting to dispossess Lineback of his investment or property rights in his hangar and supporting facilities. The city has tendered a lease to Lineback contingent upon his paying the rental and fees. We find nothing in the record to support a finding that the city ratified any agreement with Lineback whereby he acquired property rights at the airport which would prohibit the city from imposing commercial fees upon him. Likewise, we find nothing in the record to justify applying the doctrine of estoppel against the city. City of Rapid City v. Hoogterp, 85 S.D. 176, 179 N.W.2d 15.

Because the land in question is held by the city for public use, Lineback could gain no right, interest or privilege to use the land as against the city. Resnick v. City of Fort Madison, Iowa, 145 N.W.2d 11. One who deals with a municipality is charged with the knowledge of the nature of its duties and the extent of its powers. Rhodes v. City of Aberdeen, 74 S.D. 179, 50 N.W.2d 215.

Lineback contends that the fees established under Ordinance 369 are unreasonable and discriminatory and therefore cannot be applied to him. He contends that the effect of the fees is to make it impossible for him to operate his commercial flying business competitively.

The trial court found that the fees established in the resolution of January 15, 1968 were reasonable. This finding is supported by evidence that the Federal Aviation Administration had approv-

ed as reasonable for the Winner airport fees which were substantially higher than the fees actually established by the resolution.

A member of the Winner Zoning Board of Adjustment testified that in the fall of 1967 shortcomings in the management of the city airport were brought to the attention of the Board. The Board was charged with the responsibility of preparing an ordinance which would provide for the improved management and control of the airport so that the airport would make better progress in the future. The Board drafted the proposed fee schedules, fixed base operator's agreement, lease forms and management agreements which were submitted to the Federal Aviation Administration and the State Aeronautics Commission. All fees and rentals to be charged were to be used for the support, maintenance and eventual improvement of the airport.

 We believe that there is sufficient evidence in the record to support the trial court's finding that the fees were not unreasonable and we cannot say that such finding is clearly erroneous. SDCL 15-6-52(a); In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W. 2d 455. When an ordinance is passed relating to a matter which is within the legislative power of a municipality, all presumptions are in favor of its validity, constitutionality and reasonableness. City of Sioux Falls v. Kadinger, 75 S.D. 86, 59 N.W.2d 631; 56 Am.Jur.2d, Municipal Corporations, § 382, p. 420. The courts will not interfere with the exercise of discretion by a city's governing board unless the action is clearly unreasonable and arbitrary. Erickson v. City of Sioux Falls, 70 S.D. 40, 14 N.W.2d 89.

On September 11, 1968, the city signed an airport management agreement with one Virgil J. Chase whereby Chase agreed to act as manager of the Winner airport for a salary of $300 per month. Prior to this the city had compensated its airport manager by leasing a portion of the airport to him for $1.00 per year in return for his management services. Lineback claims that under the new management contract the manager has duties almost identical to those of the old lease agreement and is also obligated to furnish good, prompt and efficient services adequate to meet all

of the demands for services at the airport. The net effect of this, argues Lineback, is to subsidize his competition and to put him at a severe competitive disadvantage.

It is within the authority of the city to enter into such airport management agreements as it sees fit. It is not for this court to judge the wisdom of the city's decision in agreeing to pay its airport manager $300 per month. Erickson v. City of Sioux Falls, supra. So long as the fees authorized by the resolution of January 15, 1968 are applied to all who come within the purview of the fee schedule, we cannot say that the fee schedule is discriminatory.

Finally, Lineback contends that the city did not properly acquire the exclusive rights to sell fuel at the airport.

A municipality which has used federal funds in the improvement of its airport is prohibited from granting exclusive rights for the sale of gasoline and oil at the airport to an individual. 49 U.S.C.A. § 1349. The Federal Aviation Administration does, however, permit a city to retain the exclusive rights to the sale of gasoline and oil at the airport.

SDCL 50-7-12 states that:

"The governing body of a city, town or county which has established an airport or landing field and acquired, leased, or set apart real property for such purpose may construct, improve, equip, maintain, and operate the same and shall have authority to lease or sublet such property for airport purposes. The expenses of such construction, improvement, equipment, maintenance, and operation shall be a city, town, or county charge as the case may be."

We believe that the legislative grant of the authority to operate an airport carries with it the incidental grant of authority to a municipality to carry on the sale of gasoline and oil at the airport through its duly employed manager. We think it

would be too narrow a reading of the statute to hold that the power to operate an airport does not carry with it the exclusive right to sell gasoline and oil at the airport. Rehurek v. Rapid City, 65 S.D. 542, 275 N.W. 859.

Lineback contends that the city could not legally reserve the power to sell gasoline and oil by resolution. SDCL 9-19-1 defines "resolution" as:

"* * * any determination, decision, or direction of the governing body of a municipality of a special or temporary character for the purpose of initiating, effecting, or carrying out its administrative duties and functions under the laws and ordinances governing the municipality."

SDCL 9-19-8 provides that a resolution shall be recorded at length in the minutes of the meeting at which it is passed and shall be published in full as part of the minutes. Every resolution takes effect on the twentieth day after publication unless suspended by operation of a referendum. SDCL 9-19-13. We hold that it was within the power of the city to reserve to itself the exclusive rights to the sale of gasoline, oil and other lubricants and that this right was properly exercised through the adoption of the resolution of January 15, 1968.

The judgments in both cases are affirmed.

BIEGELMEIER, P. J., and HANSON and WINANS, JJ., concur.