**LIFE STAR AMBULANCE SYSTEMS, INC., Relator,**

**v.**

**Sister Mary Madonna ASHTON, Commissioner of the Minnesota Department of Health, Respondent.**

**No. C6–84–1677.**

Court of Appeals of Minnesota.

March 12, 1985.

Steven M. Bradt, Grand Rapids, for relator.

Hubert H. Humphrey, III, Atty. Gen., Audrey Kaiser Manka, Sp. Asst. Atty. Gen., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

**OPINION**

RANDALL, Judge.

Life Star Ambulance Systems, Inc. appeals a decision made by the Commissioner of the Department of Health denying its application for a license to provide advanced life support transportation services for parts of Itasca and Aitkin Counties. Life Star contends that the Commissioner's decision is not supported by substantial evidence in view of the entire record and is arbitrary and capricious. Appellant Life Star did not appear for oral argument, and

the court proceeded under its internal rule 2.8.

We affirm.

## FACTS

Life Star operates an ambulance service out of Hill City in Aitkin County. Since January 1, 1983, it has been licensed by the Department of Health to provide basic life support (BLS) transportation services to a primary area covering parts of Aitkin and Itasca Counties. In 1983, Life Star made 100 runs. Ten of these runs were non-emergency. It lists 32 paid personnel on its current personnel roster. On April 2, 1984, Life Star applied for a license to provide advanced life support (ALS) transportation services for the same primary service area as is covered by its BLS transportation services license. In describing the effect of the proposed service on public health Life Star stated that it "hope[d] to establish a lower mortality rate on cardiac arrests. We also feel we will prevent the occurrence of cardiac arrest by [advanced life support] intervention."

Pursuant to Minn.Stat. § 144.802, subd. 3(c) (1982) a public hearing was held and Life Star's application was reviewed by a health systems agency. In this case a project review committee of the Health Systems Agency of Western Lake Superior reviewed the application, considered the need for the service based on the criteria set forth in Minn.Stat. § 144.802, subd. 3(d) (1982), and recommended that the Commissioner deny the application because (1) the low total run volume and low number of cardiac cases minimizes any effect on public health and makes paramedic skill maintenance difficult and (2) the information regarding costs, charges, and staff expenses supplied by Life Star was insufficient and unrealistic. The board of directors of the Health Systems Agency voted to recommend denial of Life Star's application.

The Commissioner incorporated the health systems agency's application of the statutory criteria into her determination and denied Life Star's application.

## ISSUE

Was the decision by the Commissioner denying Life Star's application for a license to provide advanced life support transportation services unsupported by substantial evidence based upon the entire record as submitted or arbitrary and capricious?

## ANALYSIS

Life Star contends that the Commissioner's decision is not supported by substantial evidence in view of the entire record and is arbitrary and capricious. Minn.Stat. § 14.69 (1982) provides that this court may reverse or modify an administrative decision if an administrative finding, inference, conclusion or decision is "[u]nsupported by substantial evidence in view of the entire record as submitted * * *" or it is arbitrary and capricious.

The substantial evidence test is found in *Peoples Natural Gas Company v. Minnesota Public Utilities Commission,* 342 N.W.2d 348 (Minn.Ct.App.1983) (quoting *Taylor v. Beltrami Electric Co-Op, Inc.,* 319 N.W.2d 52 (Minn.1982)):

> We view that by the "substantial evidence" test is meant: 1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Peoples Natural Gas,* 342 N.W.2d at 351.

▆▆▆ An agency's decision is arbitrary and capricious if it represents its will and

not its judgment. *Peoples Natural Gas,* 342 N.W.2d at 351. The decision is presumed to be correct by this court "out of deference to agency skill and technical expertise...." *Crookston Cattle Company v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980).

■ Based upon the above standards and the record, we conclude that the Commissioner's decision is supported by substantial evidence and was not arbitrary and capricious.

Minn.Stat. § 144.801 *et seq.,* provides for the licensing of life support transportation services in Minnesota.

> In granting or denying a license, the commissioner shall consider the health systems agency recommendations, evidence contained in the application, any hearing record and other applicable evidence, and whether any benefit accruing to the public health would outweigh the costs associated with the proposed service....

Minn.Stat. § 144.802, subd. 4 (1982).

In this case the Commissioner considered the health systems agency recommendation. She specifically incorporated the agency's application of statutory criteria into her determination. The agency and the Commissioner considered possible benefits to public health, duplication of service, and costs associated with the proposed service.

Specifically the Commissioner found that the "effect on public health may not be significant * * * *" because (1) Life Star's total runs were low in 1983—only seven were for chest pain and there were none for cardiac arrest and (2) Life Star currently holds variances to provide services normally provided under an advanced life support transportation system license. It can administer esophageal airways and shock therapy, and can use cardiac monitors and defibrillators, all of which will likely improve patient outcome. The Commissioner also found that the benefits in relation to cost could not be assessed without further information.

Life Star does not contest the fact that it does not have a large number of emergency runs. Life Star agrees it currently holds variances normally provided under an ALS transportation services license but argues the variances it holds are not sufficient to provide the best possible care. However, "best possible care" is not a statutory criteria. The Legislature specifically directed the Commissioner to consider "whether any benefit accruing to the public health would outweigh the costs associated with the proposed service..." *Id.* Life Star made the Commissioner's task difficult when it failed to provide a realistic cost assessment of the proposed benefits. In describing the effect of the proposed service on public health, Life Star said it hoped to establish lower mortality rates for cardiac arrests and to prevent the occurrence of cardiac arrests. Yet there were no cardiac arrests on the runs in 1983. Further, the Commissioner's staff stated that Life Star's present variances for esophegeal airways, shock therapy, cardiac monitoring and defibrillation were sufficient for cardiac runs.

In its application Life Star listed total labor costs in the previous year of $3,612, yet on another page of the application stated that it had 32 paid attendants and drivers. The health agency called these figures insufficient and unrealistic. Without better data we agree. The bare total labor cost provided by the thirty-two employees shows an approximate yearly labor cost of $113 per paid attendant and driver. That is not realistic and Life Star did not satisfactorily interpret or explain those labor costs.

When asked in the application to relate the proposed cost to the proposed benefits, Life Star stated that patient rates for ALS services will be higher than the charge for BLS services but it had not established a final rate structure and that "[t]he benefits resulting from a proposed change in service are unknown." That statement is not a compelling case for the right to charge higher fees.

## DECISION

The Commissioner's decision is based upon the record including Life Star's application, and the proper criteria as set forth in Minn.Stat. § 144.802 were considered. The Commissioner's decision was not arbitrary and capricious and was supported by substantial evidence based upon the record.

AFFIRMED.