**HIAWATHA AVIATION OF ROCHESTER, INC.,**
**Relator,**

v.

**MINNESOTA DEPARTMENT OF HEALTH, Respondent.**

No. C3–85–481.

Court of Appeals of Minnesota.

Oct. 15, 1985.

Review Granted Dec. 19, 1985.

Donald C. Willeke, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Audrey Kaiser Manka, Sp. Asst. Atty. Gen., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Hiawatha Aviation appeals a decision by the Commissioner of the Department of Health denying its application for a license to operate a scheduled (non-emergency) air ambulance service. Hiawatha contends that the Commissioner's decision is arbitrary and capricious, not supported by substantial evidence, based on facts not in evidence and affected by errors of law. Hiawatha also contends that the Federal Aviation Act preempts the State's licensing of air ambulances. We reverse.

## FACTS

Hiawatha Aviation is a general aviation service operating out of Rochester, Minnesota. Hiawatha sought a scheduled life support transportation service license to provide advanced life support (ALS) and basic life support (BLS) transportation using air ambulances. This application was required because the Minnesota Department of Health requires that ambulance services within Minnesota be licensed. Minn.Stat. § 144.802, subd. 1 (1984).

In its November 14, 1983, application, Hiawatha proposed to be based at the Rochester airport. Its primary service area would be the State of Minnesota but it also proposed to provide interstate air ambulance service, including inbound and outbound flights nationally. It projected approximately 30 scheduled ALS flights and 20 scheduled BLS flights annually.

The two major licensed ALS air ambulance services in Minnesota, Air Care and Aerodrome, Inc., opposed Hiawatha's application on the ground that Rochester did not need another air ambulance licensee. The quality of medical services proposed by Hiawatha has never been questioned by anyone; Mayo Clinic doctors are to serve as Medical Director and Medical Advisor.

Hiawatha received favorable recommendations from the following county boards: Polk, Olmsted, St. Louis, McLeod, Brown, Fillmore, Mower, Isanti, Kittson, Freeborn, Wabasha, Houston, Dodge, Kanabec, Carver, Pipestone, Grant, Chippewa, Goodhue. It also received favorable comments from the Olmsted and Winona County Boards of Health and from several State representatives in the Rochester region.

Under Minn.Stat. § 144.802, subd. 3 (1984) the Commissioner of Health referred the matter for a public hearing. A hearing was held on January 26, 1984 before John Dilley, Director of the State Health Planning and Development Agency who made a written report and recommendation that the application be denied.[1] The Commissioner denied the application on April 12, 1984. Hiawatha applied again and a second hearing was held. Dilley again recommended the application be denied and the Commissioner denied the application on February 5, 1985. The Commissioner apparently found that the criteria in Minn. Stat. § 144.802, subds. 3(d)(3), (4), (5) were not met. Hiawatha appealed.

Following Hiawatha's appeal the Commissioner moved this court for leave to present additional evidence by reviewing the transcript of the two hearings and, if appropriate, to modify the Commissioner's findings and decision based on any "additional" evidence. The Commissioner stated

by affidavit she was unaware of the existence of the transcripts at the time of the decision denying the license. This motion was denied.

## ISSUES

1. Was the Commissioner's decision denying Hiawatha entry into the market preempted by the Federal Aviation Act?

2. Was the decision of the Commissioner denying Hiawatha's application for a license unsupported by substantial evidence based on the entire record as submitted, arbitrary and capricious, based on facts not in evidence and affected by errors of law?

## DISCUSSION

### I

The Federal Aviation Act of 1958, Pub.L. No. 85–726, 72 Stat. 749 (1958), was enacted out of concern for aeronautical safety. *Ward v. State*, 280 Md. 485, 374 A.2d 1118 (1977) *cert denied*, 434 U.S. 1011, 98 S.Ct. 723, 54 L.Ed.2d 754 (1978). The act is a comprehensive scheme to deal with air commerce under the administrative auspices of the Federal Aviation Administration and the Civil Aeronautics Board. *Garden State Farms, Inc. v. Bay*, 136 N.J.Super. 1, 343 A.2d 832 (N.J.Super.Ct.Law Div. 1975) *rev'd on other grounds*, 146 N.J.Super. 438, 370 A.2d 37 (N.J.Super.Ct.App. Div.1977), *modified*, 77 N.J. 439, 390 A.2d 1177 (N.J.Sup.Ct.1978); *see Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 644, 93 S.Ct. 1854, 1865, 36 L.Ed.2d 547 (1973) (Rehnquist, J., dissenting).

■ To the extent that State law conflicts with any part of the Federal Aviation

---

1. Minn.Stat. § 144.802, subd. 3(d), requires that the following factors be considered:

(1) the relationship of the proposed service, change in base of operations or expansion in primary service area to current health systems and annual implementation plans;

(2) the recommendations or comments of the governing bodies of the counties and municipalities in which the service would be provided;

(3) the duplication, if any, of life support transportation services that would result from granting the license;

(4) the estimated effect of the proposed service, change in base of operation or expansion in primary service area on the public health;

(5) whether any benefit accruing to the public health would outweigh the costs associated with the proposed service, change in base of operations, or expansion in primary service area.

Act, it is preempted by the act under Congress' power to regulate interstate commerce. *Feldman v. Philadelphia National Bank,* 408 F.Supp. 24 (E.D.Pa.1976). "Preemption of state law is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakably so ordained.'" *Blackburn v. Doubleday Broadcasting Co., Inc.,* 353 N.W.2d 550, 554 (Minn.1984) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)).

■ In general, state law may be preempted in the following circumstances: [F]irst, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law * * *; second, when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby "left no room for the States to supplement" federal law * * *; and, finally, when compliance with both state and federal law is impossible * * * or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Blackburn,* 353 N.W.2d at 554 (quoting *Capital Cities Cable, Inc. v. Crisp,* —— U.S. ——, ——, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984)).

The federal preemption section of the Federal Aviation Act provides:

[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce *any* law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services* of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.A. § 1305(a)(1) (West Supp.1985) (emphasis added). There is no question that Hiawatha is an air carrier with author-ity to provide air transportation. Further, Hiawatha's proposed ambulance service involves interstate commerce.

"There is little doubt * * * that states and municipalities are without authority to regulate 'any operation or navigation of aircraft which directly affects * * * interstate, overseas, or foreign air commerce.'" *Garden State Farms, Inc.,* 343 A.2d at 838 (citing 49 U.S.C. 1301(4)).

State and local governments retain substantial control over some aspects of aviation, particularly ground usage. *Wood v. City of Huntsville,* 384 So.2d 1081 (Ala. 1980). *See Aircraft Owners & Pilots Association v. Port Authority of New York,* 305 F.Supp. 93, 104–05 (E.D.N.Y.1969); *City of Winner v. Lineback,* 86 S.D. 165, 171–72, 192 N.W.2d 705, 709 (1971); *Santa Monica Airport Association v. City of Santa Monica,* 659 F.2d 100 (9th Cir.1981).

The federal preemption statute expresses a clear intent to preempt any state law relating to rates, routes, or services. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("relates to" language in preemption provision of Employer Retirement Income Security Act (ERISA) given plain meaning absent any indication Congress intended it to be more restrictive). In construing the statute we must examine the language employed by Congress and assume the ordinary meaning of that language accurately expresses the legislative purpose. *Park 'N Fly, Inc., v. Dollar Park and Fly, Inc.,* —— U.S. ——, ——, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). *See Metropolitan Life Insurance Co. v. Massachusetts,* —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The scope of the federal aviation preemption clause is broad but specific.

The Department of Health cannot regulate the entry into the market of Hiawatha's proposed enterprise because this is a matter of aviation services within the jurisdiction and control of the FAA. Of course, as even Hiawatha admits and in argument welcomed, this state has authority to regulate the operation of air ambulances, cover-

ing subjects such as equipment, personnel, etc. as set out in Minn.Stat. § 144.804 (1984).

■ The State's arguments against preemption are not persuasive. The State contends that the Federal Aviation Act "does not regulate air ambulances, other than requiring that they follow detailed federal regulations which apply to all air carriers such as filing flight schedules and following safety rules." That there are no specific federal regulations licensing air ambulances is not controlling. *See Shaw*, 463 U.S. at 95–100, 103 S.Ct. at 2899–01 (ERISA's preemptive scope not confined to state laws relating to specific subjects covered by ERISA, but applicable to entire field of employee benefit plans). Under the State's theory any transportation not specifically mentioned in the federal scheme could be regulated or prohibited by the State be it of food, animals, computers or sick persons as in this case. The State legislation which prevents Hiawatha from starting its interstate air ambulance business is preempted by federal authority.

The State also argues that the Minnesota statutes do not contravene the federal act because Minnesota rules recognize that air ambulances must comply with FAA regulations and the Minnesota Department of Transportation, Aeronautic Division, rules. This argument also misses the point because it is simply an indication that the State is aware of federal preemption laws in this area.

## II

Even if the Commissioners' actions were not preempted, they still could not be upheld. Administrative decisions will be upheld unless the agency's decision is (a) "[i]n violation of constitutional provisions," (b) "[i]n excess of the statutory authority or jurisdiction of the agency," (c) "[m]ade upon unlawful procedure," (d) "[a]ffected by other error of law," (e) "[u]nsupported by substantial evidence in view of the entire record as submitted," or (f) "[a]rbitrary or capricious." Minn.Stat. § 14.69 (1984).

■ An agency's decision is arbitrary and capricious if it represents its will and not its judgment. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission*, 342 N.W.2d 348, 351 (Minn.Ct.App. 1983). The agency's decision is presumed to be correct "out of deference to agency skill and technical expertise." *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 777 (Minn.1980); *see Life Star Ambulance Systems, Inc. v. Ashton*, 363 N.W.2d 895 (Minn.Ct.App.1985). This court "must make a 'searching and careful' inquiry of the record to ensure that the agency action has a rational basis. * * * Further, the agency must explain on what evidence it is relying and how that evidence connects rationally with the agency's choice of action to be taken." *Manufactured Housing Institute v. Pettersen*, 347 N.W.2d 238, 244 (Minn.1984) (cites omitted).

The Minnesota interpretation of the substantial evidence test is as follows:

> We view that by the 'substantial evidence' test is meant: 1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than 'some evidence'; 4) more than 'any evidence'; 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Peoples Natural Gas*, 342 N.W.2d at 351 (quoting *Taylor v. Beltrami Electric Co-op., Inc.*, 319 N.W.2d 52, 56 (Minn.1982)).

■ We note initially that the Commissioner is required by Minn.Stat. § 144.802, subd. 4 to consider the "health systems

agency recommendations, evidence contained in the application, *any hearing record* and other applicable evidence, and whether any benefit accruing to the public health would outweigh the costs associated with the proposed service, * * *." *Id.* (emphasis added). Here, the Commissioner failed to consider the record as evidenced by the Commissioner's appellate motion and affidavit stating she did not even know a record of the hearings existed. Her decision was, therefore, "[m]ade upon unlawful procedure." Minn.Stat. § 14.69(c).

The Commissioner's decision to deny the license was grounded primarily on the fact that Hiawatha's application would duplicate existing services. The Commissioner stated:

> The existing capacity of current providers seems sufficient to handle current demand. Figures enumerating air ambulance runs inbound and outbound from Rochester are an indication of air ambulance activity, not an expression from providers, the general public, *et al,* that there is an unmet need. The governmental support generated by the applicant supports the continued availability and proposed additional availability of ALS–S air service in and out of Rochester. This service is currently being provided. The governmental support does not offer any comment that there is an unmet need that only the applicant can remedy and/or provide. Concerning cost versus benefit, competition is not considered to be a "need factor" by the statutory criteria. The goal of the ambulance licensing statute is to assure high quality service capabilities within a system of state statute and regulatory activities. Competition is not a factor for determining need for any type of licensed ambulance activity.

> \*      \*      \*      \*      \*      \*

The ambulance licensing law currently applies to all types of ambulance activity for licensees based within Minnesota. It does not make a distinction between immediate emergency response or pre-arranged service, where competition would in all likelihood occur.

Therefore, it cannot be recommended to the Commissioner that this application be supported for approval of licensure as an ALS–S air ambulance provider. Competition and "market forces" alone are not sufficient to warrant licensure. This is especially true since the statutory criteria define a need test and need has not been demonstrated.

■ 1. The statement that "existing capacity of current providers seems sufficient to handle current demand" lacks support in the record. The record shows that most of the air ambulance services in Rochester, especially inbound flights, were not being provided by the current licensees but rather were being provided by out-of-state unlicensed operators. There is nothing in the record indicating what the demand is for Minnesota-based operators.

■ 2. The statement that there must be an expression from "the general public, *et al,* that there is an unmet need" imposes an impossible burden on Hiawatha. We agree with Hiawatha, in asking rhetorically:

> Who among 4 million Minnesotans and 250 million Americans shall come forth to testify that they expect to become critically ill any day now and will need an air ambulance service to or from Rochester in the future but do not want to use the presently licensed service for reasons of price, or quality, or location, or whatever consideration?

Imposing an impossible burden is an arbitrary decision.

■ 3. In rejecting the comments and recommendation of the governing bodies of over 20 counties and municipalities, the Commissioner acted arbitrarily in contravention of Minn.Stat. § 144.802, subd. 3(d)(2) which states that governmental recommendations or comments must be taken into account. Governmental support cannot be dismissed merely by saying that the support does not offer any comment that there is an unmet need which only the applicant can remedy and/or provide.

There is no requirement that the governmental comments and recommendations must address only "unmet need."

4. The Commissioner's discussion of "competition" prompts our concern. Apparently the Commissioner lumped factors (3), (4), and (5) from Minn.Stat. § 144.802, subd. 3(d) together under the heading of "competition." These factors are:

(3) the duplication, if any, of life support transportation services that would result from granting the license;

(4) the estimated effect of the proposed service, change in base of operation or expansion in primary service area on the public health;

(5) whether any benefit accruing to the public health would outweigh the costs associated with the proposed service, change in base of operations, or expansion in primary service area.

*Id.*

■■■ The Commissioner never properly addressed the question of effect on public health, benefit to the public and the public costs associated with Hiawatha's application. These factors are not properly considered merely by saying that "[c]ompetition is not a factor."

■■■ The Commissioner's statement that competition is not a factor is erroneous. The statement is taken from *Twin Ports Convalescent, Inc. v. Minnesota State Board of Health*, 257 N.W.2d 343 (Minn. 1977), a case dealing with a license application for a land ambulance service in competition with two other operating services, one of which was subsidized by the City of Duluth. In holding that the defendants should not have been issued a license to operate the service without a prior determination at a public hearing that the public convenience and necessity required the additional service, the court stated:

We interpret Minn.Stat. § 144.802 to manifest a legislative intention to protect the public welfare against deleterious competition in the ambulance services field. The provision embodies a legislative determination that the ambulance service business is one in which the public welfare is not promoted by free enterprise. Ambulance service is essential to a community. It is also a service for which demand is inelastic and expenses largely fixed. Where the demand is insufficient to support additional services, either quality is sacrificed or rates and public subsidies increased, but in either event, the taxpayer-consumer suffers.

*Id.* at 348. (footnotes omitted). The court had before it the hearing examiner's report, which among other things indicated that ambulance services tend to operate within a limited market environment, and that the new service will substantially reduce the volume of non-emergency service which is currently provided by one or both of the existing operators. There was no substantial evidence in the record to support the contention that the addition of a third competitive service would result in an overall reduction in rates and that the potential clearly existed for an increase in rate schedules and/or an increase in local subsidies. *Id.* at 347–48.

The flaw in the Commissioner's analysis is that she lumped air ambulance services together with ground ambulance services. This is improper, because neither the supply, nor the demand, for air ambulance service is inelastic, as is the case with ground ambulance service. Hiawatha's planes, as well as those of its competitors, may be and are used for services other than carrying sick persons; the aircraft are readily convertible for such other uses. The market is not a limited one, as Hiawatha planned to capture some of the out-of-state inbound business.

The Commissioner's conclusion on the "duplication" ground is erroneous. Only if *all* demand is being met by the current licensees, would there be substantial duplication in services. Here, no duplication was established because the evidence indicated that most inbound flights use non-licensed planes; if some of this demand was captured by Hiawatha, this would not be duplication of Minnesota-licensed service.

Thus, we believe that competition is a proper factor to be considered in the air ambulance service area. There is no reason to believe that competition will not have the same beneficial impact on this market as in others. The likelihood is that costs to the user public will be reduced.

We agree with Hiawatha that the Commissioner's decision must be reversed because it was arbitrary and capricious, based upon unlawful procedure, not supported by the record and affected by errors of law.

### DECISION

The Commissioner's decision to deny Hiawatha a license to operate an air ambulance service is in contravention of federal rules of preemption because under the Federal Aviation Act no state may enforce a law which relates to rates, routes or services of an air carrier. Entry into the air ambulance service area is a matter of aviation services which cannot be controlled by the Commissioner. The Commissioner's decision was also arbitrary and capricious, based upon unlawful procedure, not supported by substantial evidence in the record, and affected by errors of law.

Reversed.